**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

AARON TAYLOR,

                                    Plaintiff,

            - v -                                              Civ. No. 9:03-CV-1029
                                                                    (LEK/RFT)
DR. VALAMUDY,[1] Medical Director, Marcy Correctional
Facility; MS. DOOLEY, R.N., Marcy Correctional Facility;
MS. REESE, R.N., Marcy Correctional Facility;
DR. KLYSZEJKO; and LLONES,[2] Correctional Officer,

                                    Defendants.


**APPEARANCES:**                                         **OF COUNSEL:**

AARON TAYLOR
Plaintiff, *Pro Se*
87-A-8690
Gouverneur Correctional Facility
P.O. Box 370
Scotch Settlement Road
Gouverneur, NY 13642

HON. ELIOT SPITZER                                  GERALD J. ROCK, ESQ.
Attorney General for the State of New York          Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                        <u>**REPORT-RECOMMENDATION and ORDER**</u>

            *Pro se* Plaintiff Aaron Taylor brings a civil action pursuant to 42 U.S.C. § 1983, alleging

---

            [1] Plaintiff mistakenly spells Defendant Vadlamudi's name as "Valamudy." *See* Dkt. No. 68, Krishna K. Vadlamudi Aff. The Court will refer to this Defendant by the proper spelling.

            [2] Plaintiff also mistakenly spells Defendant Llorens's name as "Llones." *See* Dkt. No. 68, Carlos Llorens Aff. The Court will refer to this Defendant by the proper spelling.

verbal harassment by Defendant Llorens[3] and deliberate indifferent towards his medical needs in

violation of the Eighth Amendment by all Defendants.  Dkt. No. 47, Am. Compl. at ¶¶ 13-40.

Defendants bring a Motion for Summary Judgment.  Dkt. No. 68.  Plaintiff opposes the Motion.

Dkt. No. 77.  For the reasons to follow, it is recommended that the Motion for Summary Judgment

be **granted**.

## I. FACTS[4]

On or about February 12, 2003, Defendant Dooley, a Registered Nurse at the Marcy

Correctional Facility ("Marcy") filled out a Health Transfer Information Form because Plaintiff was

to be transferred to another facility for a court appearance on February 20, 2003.  Dkt. No. 68,

Defs.' 7.1 Statement at ¶¶ 11 & 14;[5] Am. Compl. at ¶¶ 13 & 14; Dkt. No. 68, Karen Dooley Aff.,

Ex. A, Health Transfer Information Form, dated Feb. 12, 2003.  This form is used for any inmate

who is to be temporarily transferred and summarizes the inmate's medical condition.  Defs.' 7.1

Statement at ¶ 13.  Completion of the form only requires a review of an inmate's file, not a physical

---

[3] Within Plaintiff's Amended Complaint, he states that he was verbally threatened by Defendant Llorens.  Dkt. No. 47, Am. Compl. at ¶¶ 32 & 33.  It is unclear whether Plaintiff asserts a separate cause of action for verbal harassment among his Eighth Amendment medical indifference claims.  In light of Plaintiff's *pro se* status and since Defendants have addressed this claim in their Memorandum of Law in support of their Motion for Summary Judgment, the Court will address this claim.  *See* Dkt. No. 68, Defs.' Mem. of Law at pp. 12-13.

[4] Plaintiff has failed to comply with Northern District of New York Local Rule 7.1(a)(3).  Plaintiff submits a "Statement of Facts," however, Plaintiff did not mirror the movant's Statement of Material Facts by either admitting or denying each of the movant's assertions in matching numbered paragraphs.  Dkt. No. 77.  Moreover, instead of providing material facts where no genuine issue exists, Plaintiff submits a "Statement" providing material facts where a genuine issue exists.  As Plaintiff has failed to comply with the Local Rule, any facts not specifically controverted by Plaintiff may be deemed admitted.  N.D.N.Y.L.R. 7.1(a)(3).  Nevertheless, this Court will utilize Plaintiff's Verified Amended Complaint and Response to the Motion with accompanying Exhibits as well as Defendants' Statement of Material Facts with accompanying Exhibits to adduce the uncontested, material facts of the case.

[5] Although Defendants' 7.1 Statement states that the form was completed on March 12, 2003 for a March 20th transfer, a copy of the form provided clearly shows both these events taking place on those dates in February, not March.  *See* Dkt. No. 68, Karen Dooley Aff., Ex. A, Health Transfer Information Form, dated Feb. 12, 2003.

examination of an inmate.  *Id.* at ¶ 17; Dkt. No. 77, Pl.'s Mem. of Law, Ex. A at p. 31.[6]  The only

medication prescribed for Plaintiff that was noted on the form at that time was for artificial tears.

Defs.' 7.1 Statement at ¶ 16; Dooley Aff., Ex. A, Health Transfer Information Form, dated Feb. 12,

2003.

Plaintiff was then examined on February 16, 2003, when he complained of flu-like

symptoms.  Defs.' 7.1 Statement at ¶ 22; Dkt. No. 68, Krishna K. Vadlamudi Aff., Ex. A,

Ambulatory Health Record ("AHR") entries, dated Feb. 16, 2003 at pp. 8-9.  He was treated by

medical staff and given Tylenol, Motrin, three glasses of water, and told to rest for forty-eight (48)

hours.  Defs.' 7.1 Statement at ¶ 22; Vadlamudi Aff., Ex. A, AHR entries, dated Feb. 16, 2003 at pp.

8-9.  Plaintiff again sought medical treatment by the staff on February 18, 2003, when he was

complaining of a sore throat.  Defs.' 7.1 Statement at ¶ 22; Vadlamudi Aff., Ex. A, AHR entry,

dated Feb. 18, 2003 at p. 9; Am. Compl. at ¶¶ 17-19.  He was told to continue taking Tylenol,

Motrin, and fluids and that he should follow up with a sick call.  Defs.' 7.1 Statement at ¶ 22;

Vadlamudi Aff., Ex. A, AHR entry, dated Feb. 18, 2003 at p. 9.  Then on February 19, 2003, prior

to being examined by the doctor, Plaintiff was seen by medical staff for his sore throat and it was

noted that Plaintiff would need antibiotics.  Defs.' 7.1 Statement at ¶¶ 23-25; Vadlamudi Aff., Ex.

A, AHR entry, dated Feb. 19, 2003 at p. 10.  Plaintiff was also told to gargle with salt water.  Defs.'

7.1 Statement at ¶ 25; Vadlamudi Aff., Ex. A, AHR entry, dated Feb. 19, 2003 at p. 10.  That same

day, Dr. Vadlamudi examined Plaintiff regarding the sore throat, noted the whitish and yellow areas

in his throat, diagnosed Plaintiff with tonsilitis, and prescribed Amoxicillin.  Defs.' 7.1 Statement at

---

[6] Plaintiff attempts to label his Exhibits, however, most of labels have either been cut off on the photocopies submitted or are illegible.  Therefore, the Court will refer to all Exhibits submitted as "Ex. A" and assign page numbers to the Exhibits in the order in which they were filed.

¶ 26; Vadlamudi Aff., Ex. A, AHR entry, dated Feb. 19, 2003 at p. 10; Am. Compl. at ¶ 20.  As Dr. Vadlamudi could not dispense the medication himself, he directed that the prescription be sent to the pharmacy that day and Plaintiff received a dose of Amoxicillin from the infirmary on the morning of February 19, 2003.  Defs.' 7.1 Statement at ¶¶ 27-28 & 30; Vadlamudi Aff., Ex. B, Prescription, dated Feb. 19, 2003.

Prior to being transferred on February 20, 2003, Plaintiff apparently told the transport officer that he was feeling sick and the officer, in turn, allegedly spoke to Nurse Reese about Plaintiff's condition.  Am. Compl. at ¶ 24; *see generally* Defs.' 7.1 Statement at ¶¶ 34-37.  However, Defendant Reese does not have the authority to stop Plaintiff from boarding the bus nor was there an emergency situation that would have warranted such action.  Defs.' 7.1 Statement at ¶¶ 35 & 36. Plaintiff did receive his medication from Marcy before boarding the bus, but not from Defendant Reese who was not authorized to prescribe medications.  Defs.' 7.1 Statement at ¶¶ 29 & 37. Plaintiff was then transferred from Marcy on February 20, 2003, pursuant to a court order, to the Fishkill Correctional Facility ("Fishkill").  Defs.' 7.1 Statement at ¶¶ 9-10 & 12.

Plaintiff arrived at Fishkill on the evening of February 20, 2003, and was seen by medical staff the next day after complaining of a sore throat.  Vadlamudi Aff., Ex. A, AHR entry, dated Feb. 21, 2003 at p. 11.  He was given Tylenol, told to gargle, and encouraged to drink more fluids.  *Id.* On February 23, 2003, Plaintiff was seen by a nurse and complained of a sore throat, fever, and swollen tonsils.  Defs.' 7.1 Statement at ¶ 39; Dkt. No. 68, Richard Klyszejko Aff., Ex A, AHR entry, dated Feb. 23, 2003.  The nurse called Dr. Klyszejko who prescribed Penicillin and Tylenol and told Plaintiff to increase his fluids, rest, and gargle with salt water.  Defs.' 7.1 Statement at ¶¶

38 & 40-42;[7] Klyszejko Aff., Ex A, AHR entry, dated Feb. 23, 2003.  Plaintiff was also seen by

medical staff on February 24 and 25, again complaining of a sore throat and on the 25th, Plaintiff

was given Advil in addition to the Penicillin.  Defs.' 7.1 Statement at ¶¶ 44 & 45; Klyszejko Aff.,

Ex A, AHR entries, dated Feb. 24 & 25, 2003.

On February 26, 2003, Dr. Klyszejko examined Plaintiff, noticed Plaintiff's condition had

not improved, and diagnosed him as suffering from peritonsillar abscess.  Defs.' 7.1 Statement at ¶

46; Klyszejko Aff., Ex A, AHR entries, dated Feb. 26, 2003.  Based on the condition, Dr. Klyszejko

felt Plaintiff should be transferred to a hospital and confirmed this course of treatment with another

doctor.  Defs.' 7.1 Statement at ¶¶ 47 & 48; Klyszejko Aff., Ex A, AHR entries, dated Feb. 26,

2003.  That same day, Defendant Llorens helped transport Plaintiff when he was transferred to St.

Agnes Hospital.  Defs.' 7.1 Statement at ¶¶ 49 & 50; *see generally* Am. Compl. at ¶ 31 & 34; Pl.'s

Mem. of Law, Ex. A at p. 58.  Apparently, Plaintiff was prescribed Augmentin while at the hospital.

Am. Compl. at ¶ 31; Defs.' 7.1 Statement at ¶ 51.  Plaintiff was then returned to Fishkill on March

1, 2003, and admitted to the infirmary.  Defs.' 7.1 Statement at ¶ 54; Klyszejko Aff., Ex B, Progress

Notes, dated Mar. 1, 2003.  Plaintiff remained in the infirmary and was examined each day until

March 3, 2003, when Plaintiff was sent back into the general population.  Defs.' 7.1 Statement at ¶

55; Klyszejko Aff., Ex B, Progress Notes, dated Mar. 1-3, 2003.  On March 3, 2003, Plaintiff was

prescribed Augmentin and Tylenol by Dr. Klyszejko.  Klyszejko Aff., Ex C, AHR entry, dated Mar.

3, 2003.

Subsequently, on March 7, 2003, Plaintiff asked for artificial tears and Motrin for his knee

---

[7] Although Defendants' 7.1 Statement states that Dr. Klyszejko first became aware of Plaintiff's condition on March 23, 2003, the medical records clearly indicate that this occurred on February 23, 2003.  Dkt. No. 68, Richard Klyszejko Aff., Ex A, AHR entry, dated Feb. 23, 2003.

pain.[8]  Klyszejko Aff., Ex C, AHR entries, dated Mar. 7, 2003.  Plaintiff also complained that a

correction officer "had taken his meds from him before he went to OSH."[9]  Defs.' 7.1 Statement at ¶

61; Klyszejko Aff., Ex C, AHR entries, dated Mar. 7, 2003.  A notation was also made by medical

staff on that date regarding Plaintiff's tonsilitis and medication.  Klyszejko Aff., Ex C, AHR entry,

dated Mar. 7, 2003.  On March 10, 2003, medical staff noted that Plaintiff had been seen at St.

Agnes on March 7, 2003, and that Plaintiff was now asking about his antibiotics which Plaintiff

claims Correction Officer Llorens took from him on March 6, 2003.  Defs.' 7.1 Statement at ¶ 60;

Klyszejko Aff., Ex C, AHR entry, dated Mar. 10, 2003; Am. Compl. at ¶ 32.  Plaintiff also alleges

that Llorens threatened him with physical force and/or confinement regarding the medication.  Am.

Compl. at ¶ 32.  The medical staff also mentioned that this issue of the medication would be

discussed with the doctor.  Klyszejko Aff., Ex C, AHR entry, dated Mar. 10, 2003.  That same day,

the nurse spoke with Dr. Klyszejko about the Augmentin and a seven-day supply was dispensed

from the pharmacy on March 3, 2003.  *Id.*, Ex C, AHR entry, dated Mar. 10, 2003.  Dr. Klyszejko

told the nurse that the prescription was not to be re-written.  *Id.*, Ex C, AHR entry, dated Mar. 10,

2003.

Plaintiff was transferred back to Marcy on March 18, 2003, and was seen by Nurse Reese

upon his return.  Vadlamudi Aff., Ex. A, AHR entry, dated Mar. 18, 2003 at p. 14; Am. Compl. at ¶

35.  Reese noted Plaintiff's complaint about his medications being taken by Llorens and then spoke

to Dr. Vadlamudi about the Amoxicillin that was prescribed prior to Plaintiff's transfer to Fishkill.

---

[8] Plaintiff does not challenge the medical treatment received for these two medical issues.

[9] The Court is unclear as to what "OSH" refers to as only this abbreviation was used, however, Defendants reference this incident in relation to St. Agnes Hospital.  *See* Defs.' 7.1 Statement at ¶ 61.

Vadlamudi Aff., Ex. A, AHR entry, dated Mar. 18, 2003 at p. 14.  Dr. Vadlamudi did not find it

necessary for Plaintiff to have any antibiotics at that time.  *Id.*  Plaintiff was seen that same evening

by medical staff and requested antibiotics.  *Id.*, Ex. A, AHR entry, dated Mar. 18, 2003 at p. 19.

Plaintiff was told to gargle with warm salt water and that a doctor would evaluate him on March 20,

2003.  *Id.*  Plaintiff was examined by a doctor on March 20, 2003, and a throat culture was done and

medication was ordered.  *Id.*, Ex. A, AHR entry, dated Mar. 20, 2003 at p. 20.

Afterwards, on March 25, 2003, Plaintiff complained of his tonsils again, was given

Ibuprofen, and the medical staff noted he was scheduled to see the doctor.  *Id.*, Ex. A, AHR entry,

dated Mar. 25, 2003 at p. 21.  The same complaint was lodged on March 27, 2003, and the nurse

noted that Plaintiff was to see Dr. Vadlamudi the next day and that Plaintiff still had four (4)

Amoxicillin left.  *Id.*, Ex. A, AHR entry, dated Mar. 27, 2003 at p. 23.  Nurse Dooley took

Plaintiff's vitals on March 28th prior to Dr. Vadlamudi's examination.  *Id.*, Ex. A, AHR entry, dated

Mar. 28, 2003 at p. 23.  Dr. Vadlamudi then evaluated Plaintiff and stated that despite Plaintiff's

complaints and demands for more antibiotics, after a throat exam, Dr. Vadlamudi concluded there

was no evidence of tonsilitis, no abscesses, and no need for further antibiotics.  *Id.*, Ex. A, AHR

entry, dated Mar. 28, 2003 at p. 24.  Plaintiff became argumentative and had to be escorted out.  *Id.*

Plaintiff also made numerous complaints from April until October 2003 regarding his sore

throat.[10]  During this time, some of the medical staff, including Nurses Dooley and Reese and Dr.

Vadlamudi, examined Plaintiff for his complaints and found that sometimes there was redness or

white spots on his throat, but mostly there was no evidence that anything was wrong with Plaintiff's

throat.  *Id.*, Ex. A, AHR entries at pp. 25-35, 39-46, 48-51, 53-56, 58-65, 67-68, 70, 74-76, & 78.

---

[10] The medical records provided ended halfway through the month of October.  *See* Vadlamudi Aff., Ex. A.

Plaintiff also received medications, such as Amoxicillin and Tylenol, on several occasions or was told he did not need those medications because there was nothing wrong; Plaintiff was further told at various times to gargle with salt water and increase his fluid intake. *Id.*, Ex. A, AHR entries at pp. 28, 30, 32, 34-35, 39, 41-44, 48, 50-51, 54, 55, 61-62, 64, 67, 70, 75-76, & 78. In addition, throat cultures were taken a few times due to Plaintiff's continued complaints of a sore throat. *Id.*, Ex. A, AHR entries at pp. 28, 42, 46, 60-61, & 68.

Furthermore, on July 23, 2003, Plaintiff had a consultation with the Ear, Nose, and Throat ("ENT") specialist who apparently recommended that Plaintiff have surgery to remove the tonsils. *Id.*, Ex. A, AHR entries at pp. 50 & 51. This consult was reviewed and the staff at Marcy noted that Plaintiff would be scheduled for an elective tonsillectomy. *Id.*, Ex. A, AHR entries at p. 53. Plaintiff repeatedly inquired about the surgery, though it had not been scheduled yet. *Id.*, Ex. A, AHR entries at pp. 53-57, 64-65, & 69. Nurse Reese, on August 14, 2003, told Plaintiff it would take some time to schedule the surgery and in the interim, Plaintiff was examined and treated countless times. *Id.*, Ex. A, AHR entries at pp. 53-65, 67-68, & 70. On September 28, 2003, Plaintiff began the pre-surgery procedures and consults for surgery that was scheduled for October 7, 2003. *Id.*, Ex. A, AHR entries at pp. 70-71. Plaintiff had the tonsillectomy on October 7, 2003, returned back to the facility the same day, complained of pain, and was sent to the infirmary where he was seen by Dr. Vadlamudi. *Id.*, Ex. A, AHR entry at pp. 74. Plaintiff kept complaining until at least October 15, 2003, that he had pain to which Plaintiff received Tylenol to alleviate the complaints of a sore throat. *Id.*, Ex. A, AHR entries at pp. 75-76, & 78.[11]

---

[11] In addition to all of the examinations and treatments noted for his sore throat, Plaintiff was seen by medical staff on innumerable occasions for many other complaints that do not pertain to this action. *See* Vadlamudi Aff., Ex. A.

## II. DISCUSSION

### A. Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the moving party.  FED. R. CIV. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier

of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.

1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities

and draw all reasonable inferences in favor of the nonmoving party. *Nora Beverages, Inc. v. Perrier

Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary

judgment motion stage of the litigation is carefully limited to discerning whether there are any

genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this

point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential

Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

## B. Verbal Harassment

Plaintiff alleges that C.O. Llorens verbally threatened him regarding his medication. Am.

Compl. at ¶¶ 32 & 33. t Llorens asserts that Plaintiff has failed to state a cause of action as any

alleged verbal harassment does not rise to the level of a constitutional violation. Dkt. No. 68, Defs.'

Mem. of Law at pp. 12-13.

It is well settled law in this Circuit that "42 U.S.C. § 1983 is not designed to rectify

harassment or verbal abuse." *Gill v. Hoadley*, 261 F. Supp. 2d 113, 129 (N.D.N.Y. 2003) (citing

*Alnutt v. Cleary*, 913 F. Supp. 160, 165-66 (W.D.N.Y. 1996)); *Petway v. City of New York*, 2005

WL 2137805, at *3 (E.D.N.Y. Sept. 2, 2005); *Larocco v. N.Y. City Dep't of Corr.*, 2001 WL

1029044, at *5 (S.D.N.Y. Aug. 31, 2001). Thus, "verbal harassment or profanity alone,

unaccompanied by an injury no matter how inappropriate, unprofessional, or reprehensible it might

seem, does not constitute the violation of any federally protected right and therefore is not

actionable under 42 U.S.C. § 1983." *Moncrieffe v. Witbeck*, 2000 WL 949457, at *3 (N.D.N.Y.

*-10-*

June 29, 2000) (quoting *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 474 (S.D.N.Y. 1998)).

Additionally, "threats do not amount to violations of constitutional rights." *Id.* (quoting *Malsh v.*

*Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995)).

In this case, Plaintiff claims that there were verbal threats but fails to allege any physical

injury as a result. Am. Compl. at ¶¶ 32 & 33; *see also Aziz Zarif Shabazz v. Pico*, 994 F. Supp. at

474 (noting that there was no physical injury accompanied with the verbal taunting and therefore no

constitutional violation was alleged). As there is no injury, Plaintiff has not stated a claim that

would constitute the violation of any federally protected right, therefore, Plaintiff's claim is not

actionable under 42 U.S.C. § 1983.

Accordingly, it is recommended that Defendants' Motion for Summary Judgment be

**granted** on Plaintiff's claim of verbal harassment.

### C. Collateral Estoppel

Plaintiff claims that Defendants Vadlamudi, Dooley, and Reese are collaterally estopped in

this action by reason of *Charnock v. Padman et al.*, 98-CV-840 (N.D.N.Y.) (TJM/GLS). Dkt. No.

77, Pl.'s Mem. of Law at pp. 23-31. Defendants assert collateral estoppel is inappropriate on these

facts. Dkt. No. 80, Defs.' Reply Mem. of Law at p. 3-4.

Pursuant to "the doctrine of offensive collateral estoppel, a plaintiff may preclude a

defendant from relitigating an issue the defendant has previously litigated and lost to another

plaintiff." *Faulkner v. Nat'l Geographic Enters., Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (citing

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979)). The Second Circuit has stated that

federal law determines whether preclusive effect will be given from a prior federal judgment.

*Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 286 (2d Cir. 2002) (citing *PRC Harris, Inc. v.*

*-11-*

*Boeing Co.*, 700 F.2d 894, 896 n.1 (2d Cir. 1983)); *see also Gelb v. Royal Globe Ins. Co.,* 798 F.2d

38, 42 (2d Cir. 1986).  Under federal law, collateral estoppel applies when:  "(1) the identical issue

was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous

proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of

the issue was necessary to support a valid and final judgment on the merits."  *Interoceanica Corp. v.*

*Sound Pilots, Inc.,* 107 F.3d 86, 91 (2d Cir. 1997) (citations omitted).  The use of offensive estoppel

must also be balanced with fairness.  *Parklane Hosiery Co. v. Shore*, 439 U.S. at 330-31; *Bear,*

*Stearns & Co. v. 1109580 Ontario, Inc.*, 409 F.3d 87, 91 (2d Cir. 2005) (noting that "if application

of offensive estoppel would be unfair to a defendant, . . . the doctrine should not be applied"

(quoting *Parklane Hosiery Co. v. Shore*)).

        Here, collateral estoppel clearly would not apply.  Plaintiff seeks to use *Charnock v. Padman*

*et al.* in an offensive position.  The Defendants in that case were P. Padman, M.D., Sandra Martin-

Karas, RN, and Michael Taylor, RN.  Dkt. No. 80, Gerald J. Rock Decl., Ex. A, Stipulation and

Order of Dismissal.  Moreover, that case was settled and pursuant to the settlement agreement,

DOCS was to amend "Directive 4918 (Inmate Health Care During Transfer) so as to provide that

prior to an inmate being transferred between correctional facilities," in regards to inmates receiving

***psychiatric medications***, the sending facility was to ensure that the medication was available at the

receiving facility.  Rock Decl., Ex. A, Stipulation and Order of Dismissal at ¶ 2 (emphasis added).

        As this was a federal case, collateral estoppel under federal law would applicable.  However,

Plaintiff cannot show that any of the four factors are present in the instant case.  First, the issues in

this case are not identical to those raised in *Charnock v. Padman et al.* as that case clearly involved

psychiatric medication and care.  Pl.'s Mem. of Law, Ex. A at p. 26.  Second, the issues were not

actually litigated and decided in the previous proceeding as the case concluded due to settlement and not by trial or motion.  Third, Defendants Vadlamudi, Dooley, and Reese did not have a full and fair opportunity to litigate the issue as they were not parties to the claim.  Lastly, there was no judgment on the merits, therefore, the resolution of the issue was not necessary to support a valid and final judgment on the merits.  Nor would it be fair to impose collateral estoppel on these Defendants based upon the foregoing reasons.

### D.  Eighth Amendment Claim

Taylor claims that Dooley acted with deliberate indifference to his medical needs when she filled out the Health Transfer Form and did not make a notation about the antibiotics Plaintiff was prescribed.  Am. Compl. at ¶¶ 13-15.  Plaintiff further asserts that Reese did not give him his medication prior to a transfer, she should have stopped him from being transferred due to his illness, and she did not give him medication after he returned back to Marcy on March 18, 2003.  *Id.* at ¶¶ 24-26, & 35.  Plaintiff also states that Dr. Vadlamudi did not adequately treat Plaintiff's sore throat and failed to promptly schedule Plaintiff's surgery on his tonsils.  *Id.* at ¶¶ 20-22, & 37.  Taylor additionally claims that Llorens was deliberately indifferent when he took medication from him on March 6, 2003, and that Dr. Klyszejko did not adequately treat Plaintiff's sore throat and failed to follow another doctor's recommendation regarding medication prescriptions.  *Id.* at ¶¶ 32-36.

The Eighth Amendment to the U.S. Constitution prohibits cruel and unusual punishment.  Prohibited punishment includes that which "involve[s] the unnecessary and wanton infliction of pain."  *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to [his] serious medical needs."  *Smith v.*

*Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003) (internal quotation marks and citations omitted)

(alteration in original).  This standard contains objective and subjective elements.  *Id.*  "The

objective 'medical need' element measures the severity of the alleged deprivation, while the

subjective 'deliberative indifference' element ensures that the defendant prison official acted with a

sufficiently culpable state of mind."  *Id.* at 183-84 (citing *Chance*, 143 F.3d at 702 & *Hathaway v.*

*Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)).  The subjective element "entails something more than

mere negligence . . . [but] something less than acts or omissions for the very purpose of causing

harm or with knowledge that harm will result."  *Hathaway v. Coughlin*, 99 F.3d at 553 (quoting

*Farmer v. Brennan*, 511 U.S. 825 (1994)).

        This deliberate indifference must be in regards to the "prisoner's serious illness or injury[.]"

*Estelle v. Gamble*, 429 U.S. 97, 105 (1976).  Additionally, "'[b]ecause society does not expect that

prisoners will have unqualified access to health care,' a prisoner must first make this threshold

showing of serious illness or injury in order to state an Eighth Amendment claim for denial of

medical care."  *Smith*, 316 F.3d at 184 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (further

citation omitted).  Some factors that determine whether a prisoner's medical condition is serious

include: "1) whether a reasonable doctor or patient would perceive the medical need in question as

important and worthy of comment or treatment, 2) whether the medical condition significantly

affects daily activities, and 3) the existence of chronic and substantial pain."  *Brock v. Wright*, 315

F.3d 158, 162-63 (2d Cir. 2003) (internal quotation marks and citations omitted) (noting that an

inmate is not required to show "that he or she experiences pain that is the limit of human ability to

bear, nor [does the court] require a showing that his or her condition will degenerate into a life

threatening one").

The prisoner has to show "more than an inadvertent failure to provide adequate medical care by prison officials to successfully establish Eighth Amendment liability." *Smith*, 316 F.3d at 184 (internal quotation marks and citation omitted).  Prison officials act with deliberate indifference "when [they] 'know[] of and disregard[] an excessive risk to inmate health or safety; the official[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference.'" *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. at 837).  The Eighth Amendment deals with "the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract[.]" *Smith*, 316 F.3d at 186 (citations omitted).  Moreover, the "severity of the alleged denial of medical care should be analyzed with regard to all relevant facts and circumstances." *Id.* at 187 (citation omitted).

A prisoner's disagreement with the form of treatment proscribed by medical personnel will not necessary implicate the Eighth Amendment. *Ifill v. Goord*, 2004 WL 1663994, at *3 (W.D.N.Y. Apr. 8, 2004) (citation omitted).  Furthermore,

> disagreements between a prisoner and prison officials over treatment decisions fall short of cruel and unusual punishment.  Thus, disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a section 1983 claim.  These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.

*Id.* (quoting *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001)).

Notably, when a prisoner, in essence, claims medical malpractice,

> a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must

> allege acts or omission sufficiently harmful to evidence deliberate indifference to
> serious medical needs.

*Hathaway v. Coughlin*, 99 F.3d at 553 (quoting *Estelle*, 429 U.S. at 106 & n.14).

If the malpractice involved "culpable recklessness, i.e., an act or failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of harm,'" then it may constitute deliberate indifference. *Id.* (quoting *Farmer*, 511 U.S. at 839). Additionally, "[p]rison officials and medical personnel have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons." *Ifill v. Goord*, 2004 WL 1663994, at *3 (internal quotation marks and citation omitted).

Because every doctor does not treat an illness in the same way, the mere difference in treatment by a defendant physician does not amount to culpability. *McKenna v. Wright*, 2002 WL 338375, at *8 (S.D.N.Y. Mar. 4, 2002) (citing *Douglas v. Stanwick*, 93 F. Supp. 2d 320, 325 (N.D.N.Y. 2000)). There will be no Eighth Amendment claim then "when a *doctor* disagrees with the professional judgment of another doctor." *Id.* (quoting *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) (emphasis in original)); *see also Webb v. Jackson*, 1994 WL 86390, at *3 (S.D.N.Y.), *aff'd* 47 F.3d 1158 (2d Cir. 1995) (stating that "mere differences in opinion, whether between doctors or laymen, based on medical care does not give rise to an Eighth Amendment violation of inadequate medical treatment pursuant to section 1983" (citation omitted)). In addition, "a claim based solely on a doctor's misdiagnosis or faulty judgment, with no facts to support a charge of deliberate indifference on his part, is not cognizable under § 1983." *Tomarkin v. Ward*, 534 F. Supp. 1224, 1230 (S.D.N.Y. 1982) (citing *Arroyo v. Schaefer*, 548 F.2d 47 (2d Cir. 1977)); *see also Troy v. Kuhlmann*, 1999 WL 825622, at *6 (S.D.N.Y. Oct. 15, 1999).

Furthermore, a delay in medical treatment does not necessarily invoke the Eighth

Amendment.  The "delay in treatment does not violate the constitution unless it involves an act or failure to act that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Thomas v. Nassau County Corr. Ctr.*,  288 F. Supp. 2d 333, 339 (E.D.N.Y. 2003) (quoting *Chance,* 143 F.3d at 703).  Although a delay in providing necessary medical care may in some cases constitute deliberate indifference, such a classification is reserved "for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast degenerating condition for three days; or delayed major surgery for over two years." *Freeman v. Stack*, 2000 WL 1459782, at *6 (S.D.N.Y. Sept. 29, 2000) (internal quotation marks omitted).

Here, Plaintiff must make a threshold showing that he suffers from a serious illness. Plaintiff suffered from tonsillitis and made many complaints regarding his sore throat.  Dkt. No. 68, Defs.' Mem. of Law at p. 5; Pl.'s Mem. of Law at pp. 32-33; *see supra* Part I.  Defendants state that for the purposes of this Motion they do not dispute that tonsilitis is a serious medical need.  Def.'s Mem. of Law at p. 5.  As Plaintiff has constantly been treated for these ailments and has complained of substantial pain associated with these conditions and as there is no real dispute from Defendants, Plaintiff has made the requisite showing of a serious illness.  However, Plaintiff must now demonstrate that the Defendants acted with deliberate indifference by knowing of and disregarding an excessive risk to Plaintiff's health and that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and they did draw the inference.

As for Defendant Dooley, Plaintiff's only claim is that she improperly filled out the Health Transfer Form, which did not include Plaintiff's prescription for Amoxicillin.  This form was filled out by Dooley on February 12, 2003, in anticipation of the impending transfer.  Defs.' 7.1 Statement

at ¶¶ 11 & 14; Dooley Aff. at ¶ 10, Ex. A, Health Transfer Information Form, dated Feb. 12, 2003.

At the moment the Form was completed, it was completely accurate as the only medication

prescribed thus far was artificial tears.  Dooley Aff. at ¶ 11, Ex. A, Health Transfer Information

Form, dated Feb. 12, 2003.  When the form is to be completed, no physical examination need be

conducted and instead, a review of an inmate's chart is all that is needed to fill out the form.  *Id.* at ¶

12; Pl.'s Mem. of Law, Ex. A at p. 31.  After the Form had already been filled out Plaintiff was not

prescribed any medication until February 19, 2003.  Vadlamudi Aff., Ex. A, AHR entry, dated Feb.

19, 2003 at p. 10.  Plaintiff states that when he arrived at Fishkill on February 20, 2003, his

prescription was not waiting for him.  Pl.'s Mem. of Law at pp. 34-36.  Plaintiff believes the Form

should have been redone prior to his departure.  Am. Compl. at ¶ 15; Pl.'s Mem. of Law at p. 36.

Despite Plaintiff's assertions, Dooley completed her duty by filing out the Form in advance of

Plaintiff's transfer.  Directive 4918, regarding the Health Transfer Form, does not state that a

completed form must be redone prior to a transfer.  Pl.'s Mem. of Law, Ex. A at pp. 30-31.  In fact,

Directive 4016 states that the Inmate Records Coordinator is to receive this Health Transfer Form

"*at least 24 hours before the trip.*"  Pl.'s Mem. of Law, Ex. A at pp. 23-24 (emphasis added).

Therefore, even if Nurse Dooley had waited to fill out the Form, she would have had to turn over the

form before the prescription was even written on February 19, 2003.  Furthermore, as Dooley did

not see Plaintiff until the time of transfer, there would have been no way for her to have known

about the medication.  Vadlamudi Aff., Ex. A, AHR entries at pp. 7-11; Defs.' Mem. of Law at p. 5.

By submitting the Form on February 12th, Defendant Dooley did not act with deliberate indifference

by knowing of and disregarding an excessive risk to Plaintiff's health.

With regard to Defendant Reese, Plaintiff asserts that she did not give him his medication

prior to his transfer to Fishkill, she should have stopped him from being transferred due to his illness, and she did not give him medication after he returned back to Marcy on March 18, 2003. First, although it is true that Reese did not give him his medication on February 20, 2003, Plaintiff himself admits that he went to the medication window at Marcy on February 20, 2003, and was given the Amoxicillin.  Am. Compl. at ¶ 25.  Second, even if Plaintiff complains that Reese did not provide him with a full prescription to take to Fishkill, Dr. Vadlamudi had written the prescription and forwarded it to the pharmacy on February 19, 2003.  Reese cannot be faulted if the pharmacy did not give Plaintiff his medication.  Defs.' 7.1 Statement at ¶¶ 27-28 & 30; Vadlamudi Aff., Ex. B, Prescription, dated Feb. 19, 2003.  Moreover, it was not Reese's duty to see inmates prior to their boarding the bus.  Dkt. No. 68, Pam Reese Aff. at ¶ 8.  Reese also did not have the authority to stop Plaintiff's transfer nor did there seem to be any type of emergency situation that should have prevented the transfer.  *Id.* at ¶ 9.  More importantly, the transfer was pursuant to a court order, which could not have been ignored.  Plaintiff was going to be transferred nonetheless unless the court stated otherwise, which it did not.  Defs.' 7.1 Statement at ¶¶ 9-10 & 12; Defs.' Mem. of Law at p. 8; Dkt. No. 68, Gerald J. Rock Decl., Ex. B, Pl.'s Dep., dated July 20, 2005, at p. 11, lines 10-22.  Finally, upon Plaintiff's return to Marcy on March 18, 2003, Plaintiff was seen by Reese. Plaintiff complained that Defendant Llorens had taken away his medication at Fishkill.  Vadlamudi Aff., Ex. A, AHR entry, dated Mar. 18, 2003 at p. 14.  Since Reese cannot prescribe medication , as she is a Registered Nurse, she called Dr. Vadlamudi to find out what should be done about the medication.  *Id.*; Reese Aff. at ¶ 12; Defs.' Mem. of Law at p. 9.  Dr. Vadlamudi stated that there was no need for the antibiotics.  Vadlamudi Aff., Ex. A, AHR entry, dated Mar. 18, 2003 at p. 14; Reese Aff. at ¶ 12; Defs.' Mem. of Law at p. 9.  In any event, however, Plaintiff received

medication two days later.  Vadlamudi Aff., Ex. A, AHR entry, dated Mar. 20, 2003 at p. 20.  This

mere delay would not implicate the Eighth Amendment.  *See Freeman v. Stack*, 2000 WL 1459782,

at *6.  Even though Reese could do nothing more than was done regarding giving Plaintiff

medication prior to his transfer and stopping his transfer due to his illness, Reese did not ignore

Plaintiff's plea for medication upon his return and in fact promptly spoke to Dr. Vadlamudi about

the situation.  With all three claims, Plaintiff has failed to demonstrate that Reese acted with

deliberate indifference by knowing of and disregarding an excessive risk to Plaintiff's health.

As to Dr. Vadlamudi, Plaintiff claims Dr. Vadlamudi did not examine his throat or give him

medication on February 19, 2003, and that Dr. Vadlamudi did not promptly schedule his

tonsillectomy according to instructions from the specialist after his return to Marcy in March.  Am.

Compl. at ¶¶ 20-22, & 37.  However, the record establishes that Plaintiff was examined and treated

by medical staff prior to Dr. Vadlamudi's examination on February 19, 2003.  Vadlamudi Aff., Ex.

A, AHR entries at pp. 8-9.  When Dr. Vadlamudi evaluated Plaintiff, he checked Plaintiff's throat as

the medical record notes that there were whitish and yellow areas in the throat.  *Id.*, Ex. A, AHR

entry, dated Feb. 19, 2003 at p. 10.  Then Dr. Vadlamudi diagnosed Taylor with tonsilitis,

prescribed Amoxicillin, and forwarded the prescription that day to the pharmacy so that it could be

dispensed to Plaintiff.  Defs.' 7.1 Statement at ¶¶ 26-28, & 30; Vadlamudi Aff. at ¶¶ 13 & 15, Ex. B,

Prescription, dated Feb. 19, 2003; Defs.' Mem. of Law at p. 7.  Plaintiff even admits that he

received two pills of Amoxicillin at the time of the examination by a nurse.  Rock Decl., Ex. A,

Pl.'s Dep., dated July 22, 2005, at p. 14, lines 14-24.  Dr. Vadlamudi did not see Plaintiff again prior

to the transfer on February 20, 2003.  Defs.' Mem. of Law at p. 7; Vadlamudi Aff. at ¶ 16.  There is

absolutely no evidence that Plaintiff was not examined or that he did not receive a prescription.

Furthermore, the pharmacy was to provide Plaintiff with the medication once Dr. Vadlamudi sent the prescription to them.  Even if Plaintiff did not receive his prescription that same day before boarding his bus for the transfer, he was given two pills of Amoxicillin by a nurse.  Rock Decl., Ex. A, Pl.'s Dep., dated July 22, 2005, at p. 26, lines 2-8; Defs.' Mem. of Law at p. 7.

In terms of the tonsillectomy, the ENT specialist recommended the ***elective*** surgery on July 23, 2003, which was approved the next day.  Vadlamudi Aff., Ex. A, AHR entries at pp. 51 & 53. However, the surgery had yet to be scheduled.  There is absolutely no evidence presented in the medical records that the surgery was cancelled by Dr. Vadlamudi at any point in time.  *See id.*, Ex. A at pp. 51-79.  Plaintiff complained on many occasions that his surgery had not happened yet but was told by Nurse Reese that scheduling the surgery takes time.  *Id.*, Ex. A, AHR entries at pp. 53-57, 64-65, & 69.  Before his pre-surgical activities began on September 28, 2003, Plaintiff complained several times to Dr. Vadlamudi about his surgery and that he sought to receive more medications.  *Id.*, Ex. A, AHR entries at pp. 54, 59, & 62.  On two occasions Dr. Vadlamudi found no evidence that Plaintiff needed medication and the third time he prescribed Amoxicillin.  *Id.*, Ex. A, AHR entries at pp. 54, 59, & 62.  Any disagreements Plaintiff had in regards to his receiving or not receiving medication does not implicate the Eighth Amendment.  *See Ifill v. Goord*, 2004 WL 1663994, at *3.  In addition, Plaintiff had the tonsillectomy on October 7, 2003, returned back to the facility the same day, complained of pain, and was sent to the infirmary where he was seen by Dr. Vadlamudi.  *Id.*, Ex. A, AHR entry at pp. 74.  Although Plaintiff feels like his surgery should have been expedited, the surgery occurred approximately two months after the recommendation was made by the ENT specialist.  This "delay" does not invoke the Eighth Amendment.  *See Freeman v. Stack*, 2000 WL 1459782, at *6.  Plaintiff's condition was not life threatening and the surgery was

*-21-*

deemed to be elective.  It inevitably would take some time to prepare for the surgery, though Plaintiff may believe to the contrary.  Furthermore, at no point in time did Dr. Vadlamudi go against the recommendation of the specialist and prevent Plaintiff from having the surgery.  Even if he did, Dr. Vadlamudi could have chosen to defer to his own method of treatment rather than that of the ENT specialist who recommended it in the first place.  *See McKenna v. Wright*, 2002 WL 338375, at *8.  Moreover, even after the surgery, Plaintiff kept complaining until at least October 15, 2003, that he had pain and a sore throat.  *Id.*, Ex. A, AHR entries at pp. 75-76, & 78.  Plaintiff has failed to establish that Defendant Vadlamudi acted with deliberate indifference by knowing of and disregarding an excessive risk to Plaintiff's health.  The medical records demonstrate to the contrary.

In regards to Defendant Llorens, Plaintiff claims he took medication from him on March 6, 2003.  However, the circumstances surrounding the alleged confiscation are vague at best.  What is known is that Plaintiff complained to medical staff at Fishkill on March 7, 2003, that Defendant Llorens "had taken his meds from him before he went to OSH."  Klyszejko Aff., Ex C, AHR entries, dated Mar. 7, 2003; *see supra* n. 9 (referring to OSH as St. Agnes Hospital).  Plaintiff claims that Llorens went to the 4-2 Housing Unit and demanded Plaintiff turn over all medication.  Pl.'s Mem. of Law at p. 46.  Llorens notes that during the months of February and March 2003, he was not working as a dorm officer in the 4-2 Housing Unit.  Dkt. No. 68, Carlos Llorens Aff. at ¶ 9. Despite this difference, Plaintiff told medical staff that his medication was seized prior to an outside trip and as a transport officer, Llorens states that when inmates are being transported to another location outside the facility, an inmate is not allowed to "retain possession" of any medications as it would constitute contraband.  Llorens Aff. at ¶ 6.  Therefore, if confiscation was necessary, it would

show that Llorens did not disregard an excessive risk to Plaintiff's health but instead was doing his duty.  In the alternative, if Llorens did expropriate the medication at a time when Plaintiff was not about to be transported, Plaintiff himself cites to a log book entry from March 6, 2003, that states "[m]eds from inmate Taylor . . . confiscated by C.O. Llorens *per medical*."  Pl.'s Mem. of Law, Ex. A at p. 93; *see also* Rock Decl., Ex. B, Pl.'s Dep., dated July 20, 2003, at p. 36, lines 20-24.  There is no notation that Llorens arbitrarily, haphazardly or intentionally deprived Plaintiff of his medication.  The log book entry simply confirms that Llorens had permission or direction from medical staff to take the medication, despite Plaintiff's assertions that there was no authorization from medical staff.  *Id.* at pp. 46-47, Ex. A at p. 93.  Moreover, when Plaintiff complained on March 10, 2003, about the confiscation, the nurse spoke to Dr. Klyszejko who stated the prescription was not to be re-written.  *Id.*, Ex. A at p. 100.  The record establishes that Llorens did not act with deliberate indifference by knowing of and disregarding an excessive risk to Plaintiff's health.

Finally, Plaintiff claims that Dr. Klyszejko "substituted his un-specialized decision to discontinue [his] ordered treatment for Augmentin" after Plaintiff returned from St. Agnes Hospital and did not properly provide medical treatment after returning from the hospital.  Am. Compl. at ¶¶ 34 & 35.  Plaintiff was transferred to St. Agnes Hospital after an examination by Dr. Klyszejko on February 26, 2003.  Klyszejko Aff. at ¶ 8, Ex A, AHR entries, dated Feb. 26, 2003.  He then returned to Fishkill on March 1, 2003, and was admitted to the infirmary.  *Id.* at ¶ 11, Ex B, Progress Notes, dated Mar. 1-3, 2003.  While in the infirmary, the medical staff checked on Plaintiff constantly and provided him with Tylenol and told him to drink fluids.  Klyszejko Aff., Ex B, Progress Notes, dated Mar. 1-3, 2003.  Then on March 3, 2003, after being examined by Dr. Klyszejko, he was discharged and sent back into the general population.  *Id.*, Ex B, Progress Notes,

dated Mar. 3, 2003.  Furthermore, Dr. Klyszejko prescribed Augmentin and Tylenol that same day.
*Id.* at ¶ 11, Ex C, AHR entry, dated Mar. 3, 2003.  Even though the prescription was not written on
the date of Plaintiff's return to Fishkill, it was provided to him two days later.  Moreover, had Dr.
Klyszejko chosen to forego prescribing the medication all together in spite of the hospital's alleged
recommendation,[12] the mere difference in treatment by a defendant physician does not amount to
culpability.  *See McKenna v. Wright*, 2002 WL 338375, at *8.  As for Plaintiff's assertion that Dr.
Klyszejko failed to properly treat him after his return from the hospital, the record, again, shows
otherwise.  After March 3rd, Plaintiff only went to see medical staff on March 7 and 10, 2003, prior
to his transfer back to Marcy and was treated accordingly.  Klyszejko Aff., Ex C, AHR entries,
dated Mar. 7 & 10, 2003.  On neither of these dates did Plaintiff request an appointment with Dr.
Klyszejko.  *Id.*  However, when Plaintiff did complain about Llorens and his medication, Dr.
Klyszejko told the nurse that the prescription was not to be re-written.  *Id.*, Ex C, AHR entry, dated
Mar. 10, 2003.  Subsequently, Plaintiff was transferred back to Marcy on March 18, 2003.
Vadlamudi Aff., Ex. A, AHR entry, dated Mar. 18, 2003 at p. 14.  Despite Plaintiff's disagreement
with Dr. Klyszejko over his medical treatment, in particular his disagreements over medications, his
claims fall short of cruel and unusual punishment.  *See Ifill v. Goord*, 2004 WL 1663994, at *3.
Plaintiff has failed to show that Dr. Klyszejko acted with deliberate indifference by knowing of and
disregarding an excessive risk to Plaintiff's health.

  Based upon all the foregoing, it is recommended that the Motion for Summary Judgment on
the Eighth Amendment claims be **granted**.

---

[12] Plaintiff provides the Court with a copy of the discharge order from the hospital which notes that medication
was ordered, however, the form does not indicate which medication was ordered.  Pl.'s Mem. of Law, Ex. A at p. 83.

### III.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Motion for Summary Judgment (Dkt. No. 68) be **GRANTED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), & 6(e).

Date:   August 29, 2006
        Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge